UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF HALF MOON BAY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GREAT AMERICAN INSURANCE COMPANY, et al.,<br><br>　　　　Defendants. | Case No. 15-cv-04500-RS<br><br>**ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING MOTION FOR EXTENSION OF DISCOVERY AND CASE MANAGEMENT DEADLINES, IN PART** |

　　　　The City of Half Moon Bay brought this action seeking to establish that several insurance companies breached their duty to indemnify the City for an $18 million liability it incurred to a property owner, negotiated down from a judgment entered against the City in favor of the property owner in an amount of nearly $37 million. After settlements, the only remaining defendants are The Hartford Financial Services Group, Inc. and Twin City Fire Insurance Company, both named in connection with a policy they contend was issued solely by Twin City. Hartford and Twin City jointly move for judgment on the pleadings, arguing that there can be no coverage on the policy, given the time period it was in effect. The City contends coverage exists under a "continuous trigger" theory. Because defendants have not shown that the non-existence of any possibility of coverage can be determined as a matter of law from the pleadings and matters subject to judicial notice, the motion will be denied. Defendants' motion to extend discovery and other case management deadlines will be granted in part, at discussed below.

*1. Background*

As this is a motion for judgment on the pleadings, the facts alleged in the complaint, and those subject to judicial notice, frame the issues.[1] In 1982, the City adopted a resolution of intent to form the Terrance Avenue Assessment District ("TAAD") to finance and construct a drainage project. This litigation relates to a large undeveloped parcel that lay within TAAD, known as "Beechwood." In 1983 and 1984, the City's contractor, Bay Cities Paving and Grading, performed work on Beechwood in connection with the TAAD project. That work included "borrowing" some 13,000 cubic yards of fill. In October of 1984, a City employee who resided nearby noted and photographed standing water on the Beechwood property in the depressions dug by Bay Cities.

Sometime prior to July of 1985, the City used a backhoe to cut ditches directing some of the standing water into a drain that had been installed on the property as part of the TAAD project. Weeds soon grew in those ditches, impeding their effectiveness. While the City periodically cut the weeds back, it eventually stopped doing so. Prior to the time TAAD construction commenced, storm water flowed on and off the gently sloped Beechwood property without obstruction. The soil removal and other work done, however, left the property with impaired drainage and numerous depressions that collected water.

In 1990, the City approved a vesting tentative map to allow for the development of 83 residential lots on Beachwood. The only portion of the property not approved for development encompassed a few lots in the southeast corner characterized as wetlands. The property owner was required, however, to obtain a Coastal Development Permit ("CDP") from the Coastal Commission before the City would begin issuing building permits.

The City then passed a so-called "sewer moratorium" due to a shortage of treatment

---

[1] Defendants' request for judicial notice of the Findings of Fact and Conclusions of Law in the underlying action, and of the insurance policies in dispute is granted. The request for judicial notice of certain newspaper articles, apparently offered for the alleged truth of facts stated therein is denied both as improper and as moot, given that defendants are no longer pursuing their argument that the City has previously been fully indemnified for its losses.

capacity at the local sewage treatment plant. As a result construction could not go forward for many years.  In 1996, however, construction of an additional sewage treatment plant was finally going forward.  In the interim, the City had also assumed the authority, previously exercised by the Coastal Commission, to issue CDPs.

By that time, ownership of the Beechwood property had come into the hands of Joyce Yamagiwa, in her capacity as trustee for certain family trusts.  Yamagiwa therefore applied to the City for a CDP.  In March of 2000, the City ultimately issued a formal resolution denying the CDP.  The City's resolution explained:

> The owners of a 24.7 acre parcel of land generally known as the Beachwood subdivision sought and obtained approval of a vesting tentative map ('VTM' herein) from the City of Half Moon Bay in 1990. That tentative map approved certain conditions which if satisfied would allow for the subdivision of the parcel into 83 buildable lots. At the time the VTM was approved, it was determined that wetlands covered a portion of the site, and the map was approved so as to prevent development of that area . . . .

The resolution went on to describe the issue in 2000 as "whether the site has seen an increase in the presence of wetlands since the 1990 approval of the VTM." On that point, it found, "the extent of wetlands on the site is greater than was determined at the time the VTM was approved" and that there were "nine new wetlands areas" on Beachwood.

Yamagiwa promptly sought and obtained a writ of mandate from the state superior court compelling the CDP to issue, but that was overturned on appeal.  Yamagiwa then pursued a damages action in this court, culminating in a bench trial, lengthy findings of fact and conclusions of law, and a judgment in her favor in the amount of nearly $37 million, later compromised to $18 million.

The City's other insurers have now reimbursed all but approximately $6.5 million it incurred in defense costs and in paying the judgment.   It is that remaining amount which is at issue now as between the City and Twin City Fire Insurance Company.[2]

---

[2] As noted above, the remaining defendants are both Twin City and Hartford.  The City does not appear to dispute Hartford's assertion the policies in dispute were issued solely by Twin City.  For

*2. Summary judgment*

There is no dispute that the insurance policies issued by the Company terminated no later than July of 1985. The damages awarded against the City followed from its determination in 2000 that no CDP could issue in light of the wetlands on the property—and from the fact that it was the conduct of the City and its contractor, Bay Cities, that created the conditions allowing those wetlands to form.

The City argues that the process of wetland formation occurs over a long period of time, and that in this instance, standing water was observed in depressions on the property created by Bay Cities' work as early as October of 1984, when the Company's policy was still in force. The City contends, therefore, that coverage is available under the "continuous trigger" theory articulated in cases such as *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal.4th 38, 56-57 (1997) and *Montrose Chemical Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645, 669-673, 686 (1995).

In *Aerojet–General*, the California Supreme Court stated that the duty to indemnify "is triggered if specified harm is caused by an included occurrence, so long as at least some such harm results within the policy period. [Citation.] *It extends to all specified harm caused by an included occurrence, even if some such harm results beyond the policy period*. [Citation.] In other words, if specified harm is caused by an included occurrence and results, at least in part, within the policy period, it perdures to all points of time at which some such harm results thereafter." *Id*. at 56–57, (italics added, fns. omitted).

Whether or not the "continuous trigger" concept is strictly applicable here, the crucial question appears to be whether the presence of standing water and draining issues on the property from the mid-80s onward might support a conclusion that there was at least some "property damage" within the meaning of the policies, particularly in light of the fact that those conditions

---

purposes of this motion, and for convenience, this order will refer to defendants collectively as "the Company." The Company has abandoned the claim made in its moving papers that the City has already been reimbursed for more than it was damaged.

ultimately resulted in the formation of wetlands precluding development of the property. As the City correctly observes, the Findings Fact and Conclusions of Law issued in the underlying case did not need to, and did not in fact, conclusively decide when the wetlands formed. It may ultimately be that the City will face an uphill battle in persuading a trier of fact that there was property damage within the meaning of the policy prior to its termination, given that it approved a vesting tentative map in 1990. The Company has not shown, however, that judgment in its favor is compelled on the basis of the pleadings and matters subject to judicial notice. Accordingly, the motion for judgment on the pleadings is denied.

*3. Extension of discovery and case management deadlines*

Shortly before the close of discovery, the Company moved to extend that deadline and all related deadlines for approximately 90 days. As the City points out, it likely would have been better practice for the Company to propound discovery and/or to seek an extension to do so at an earlier point in time and/or to identify with more particularity what discovery remains to be done. That said, trial in this matter is currently scheduled for October 2, 2017, with a final pretrial conference to be held on August 3, 2017. The parties are therefore directed to engage in further meet and confer negotiations with the goal of reaching an agreement regarding the scope of any further discovery and any appropriate modifications to the existing pre-trial schedule. No later than December 29, 2016, the parties shall file either a stipulation reflecting their agreement on such issues, or a joint statement setting out their respective points of disagreement.

**IT IS SO ORDERED**.

Dated: December 5, 2016

_____
RICHARD SEEBORG
United States District Judge